BRIAN E. WASHINGTON, COUNTY COUNSEL
Stephen R. Raab, Deputy (SBN 180939)
Brandon W. Halter, Deputy (SBN 289687)
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117,
Fax: (415) 473-3796
sraab@marincounty.org
bhalter@marincounty.org

Attorneys for Defendant
COUNTY OF MARIN

KESSELMAN BRANTLY STOCKINGER LLP
David W. Kesselman (State Bar No. 203838)
Kara McDonald (State Bar No. 225540)
1230 Rosecrans Avenue, Suite 400
Manhattan Beach, California 90266
Telephone: (310) 307-4555
Facsimile: (310) 307-4570
dkesselman@kbslaw.com
kmcdonald@kbslaw.com

McLACHLAN LAW, APC
Michael D. McLachlan (State Bar No. 181705)
2447 Pacific Coast Highway, Suite 100
Hermosa Beach, California 90254
Telephone: (310) 954-8270
Facsimile: (310) 954-8271
mike@mclachlan-law.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA PEREZ, et al., | Case No.: 18-cv-04938-JCS |
| Plaintiffs, | **JOINT MOTION FOR FINAL APPROVAL OF STIPULATION OF SETTLEMENT AND RELEASE** |
| v. | |
| COUNTY OF MARIN, | |
| Defendant. | |

1

## I.    **PRELIMINARY STATEMENT**

2      Subject to Court approval, the parties have settled the Fair Labor Standards Act, 29 U.S.C. §§

3    201 *et seq*. ("FLSA") collective action claims asserted by Plaintiff Veronica Perez and 38 other social

4    worker employees ("Plaintiffs") against Defendant County of Marin ("Defendant" or "the County").[1]

5    All parties, including all named plaintiffs and opt-in social worker employees, have signed the Joint

6    Stipulation of Settlement and Release ("Settlement Agreement").  *See* Declaration of Michael D.

7    McLachlan ("McLachlan Decl."), filed concurrently herewith, Ex. 1.  The proposed Settlement

8    Agreement provides that the County will: (1) pay $2,096,355 to the 39 social worker employees using

9    Plaintiffs' expert's calculations as a baseline for each employee's recovery; (2) separately pay

10   $585,692.37 in attorneys' fees and costs to Plaintiffs' counsel.

11      The parties believe that the settlement, which was reached following a 13-hour mediation session

12   and extensive additional negotiations between the parties, represents a fair and reasonable compromise

13   of Plaintiffs' claims.  Utilizing Plaintiffs' expert's damages calculations as a baseline, the settlement

14   represents a recovery of approximately 89% of each Plaintiff's estimated base damages over slightly

15   more than a fifty-two month period.  Given how strongly the parties dispute whether certain of the

16   Plaintiffs are exempt from overtime, and also dispute the social worker employees' overtime estimates

17   underlying Plaintiffs' expert report, including whether a third year of recovery or liquidated damages is

18   appropriate in this case (which would have to be decided by a jury), the parties believe that this is a fair

19   and reasonable compromise of Plaintiffs' claims.  McLachlan Decl. ¶ 2.  Every named and opt-in

20   plaintiff has consented to the settlement and has executed the Settlement Agreement.

21      By this motion, the parties respectfully request that the Court approve the Settlement Agreement.

22

## II.    **FACTUAL AND PROCEDURAL BACKGROUND**

23   **A.  The Collective Action**

24      Plaintiffs are social worker employees who, during the relevant period, are or were employed by

25   the County in one of eight different classifications in the Child & Family Services Division of the

26

27   ---

[1] Class actions under Federal Rule of Civil Procedure 23 and collective actions under Section 216(b) of the Fair Labor Standards Act ("FLSA") are of distinctly different natures, and the Procedural Guidance for Class Action Settlements approved for use in the Northern District of California are inapplicable to the instant action because it is a collective action under the FLSA, not a class action.

28

JOINT MOTION FOR FINAL APPROVAL OF STIPULATION AND SETTLEMENT AND RELEASE
18-CV-04938-JCS

Department of Health and Human Services ("CFS").[2]  Plaintiffs in this action include 26 named

plaintiffs and 13 opt-in collective action plaintiffs.  Plaintiffs alleged that the County misclassified

Plaintiffs as exempt from overtime pay as mandated by the FLSA.  The County denied Plaintiffs'

allegations.

### B.  Collective Action Certification

On January 15, 2019, the Court granted Plaintiffs' unopposed motion for conditional certification

of this collective action, and ordered that notice be given to the absent collective action social workers

This order was amended on February 28, 2019.  [D.E. 29.]  Notice was timely provided to the collective

action social workers.  McLachlan Decl., ¶¶ 4.  In the end, 39 of the social workers ultimately joined the

lawsuit as participating Plaintiffs.  Thirteen of the social worker are opt-in Plaintiffs.  McLachlan Decl. ¶

3.  One Opt-in Plaintiff, Katlin Brooks, requested to be dismissed.

### C.  Overview of Fact and Expert Discovery

Plaintiffs propounded significant targeted discovery on the County.  Plaintiffs sought and

received thousands of pages of written and electronic files from the County relating to, among other

things, the social workers' job descriptions and classifications, payroll records, supervisor reports, the

County's staffing documents, telephone records, personnel records, and other files potentially relevant to

the overtime worked by the social worker employees.  Plaintiffs also took the depositions of key County

personnel:  Deborah Moss, the Director of CFS; Chua Chao, a Program Director for CFS; and Corinne

Lee, a Principal Analyst in the Department of Human Resources.  McLachlan Decl. ¶ 5.

This discovery illuminated certain core issues in dispute.  First, the parties identified three main

groups of classifications at issue, each of which raised different possible FLSA exemptions:  (1) Senior

Support Services Workers; (2) Child Welfare Workers and Senior Child Welfare Workers ("Line-Staff

Social Workers"); and (3) Social Service Unit Supervisors ("Unit Supervisors").  While the parties

ultimately did not dispute whether the County misclassified Senior Support Services Workers and Line-

Staff Social Workers, the County vigorously challenged the Plaintiffs' claim that the Unit Supervisors

were misclassified.  Second, the parties disputed the amount of overtime worked by the social worker

[2] The classifications at issue in this case are:  Child Welfare Worker I/Bilingual; Child Welfare Worker II/Bilingual; Senior Child Welfare Worker, Senior Support Services Worker/Bilingual, and Social Service Unit Supervisor.

employees.  Finally, the parties disputed whether the County's conduct with respect to any misclassification was willful (thereby justifying a third year of damages under the FLSA) or lacking good faith (thereby justifying an award of liquidated damages).

On the issue of the amount of overtime worked, both sides retained expert witnesses to assess the amount of damages owing to the social worker employees.  Plaintiffs' expert, Dr. Ronald Schmidt of Schmidt & Associates, provided a collective estimate of $2.153 million in damages ($4.152 million with liquidated damages included), based upon an examination of payroll records and the employees' estimates of overtime worked, as set forth in questionnaires each employee filled out.  The County's expert, Hossein Borhani, Ph.D., of Charles River Associates, provided a collective estimate of $1.3–$1.4 million in damages, based upon an alternative analysis of the social workers' overtime estimates. McLachlan Decl. ¶ 6.

### D.  Settlement Negotiations

Serious settlement negotiations did not occur until after Plaintiffs' targeted discovery, including the depositions of key County officials, had been completed.  The parties then retained Mr. Michael Dickstein, Esq., of Dickstein Dispute Resolution, to preside over a private mediation at Mr. Dickstein's offices in downtown San Francisco on October 17, 2019.  The initial mediation date provided successful in part; the parties agreed in principle to settle the claims asserted by the Senior Support Services Worker and Line Staff Social Worker employees.  Then, following extensive additional discussions with Mr. Dickstein as well as directly with each other, the parties reached agreement regarding the Unit Supervisors' claims as well.

At all times during the settlement discussions, Plaintiffs' counsel made clear that attorneys' fees and costs could not be included in the settlement discussions; any award of attorneys' fees and costs would have to be separately addressed by the Court, or resolved informally after all of the material terms of settlement had been agreed upon.  *Id.* ¶ 8.

The County Board of Supervisors formally approved the settlement and the Settlement Agreement was signed by the President of the Board.  Separately, each of the 39 Plaintiffs and Opt-In Plaintiffs signed the Settlement Agreement.  All parties have now signed and agreed to the terms of the settlement.  McLachlan Decl. ¶ 9.

### E.  Summary of the Settlement Terms

Upon this Court's approval, the Settlement Agreement provides that $2,096,355 will be paid by the County to the 39 social worker employees.  The Settlement Agreement provides that the payment to each employee is based upon Plaintiffs' expert's analysis of what each employee is entitled to.  Using Plaintiffs' expert's report as the baseline for damages to be paid to each of the 39 Plaintiffs and Opt-In Plaintiffs, the employees will receive an average of 89.3% of each Plaintiff's estimated base damages over a more than fifty two month period.

The parties have agreed to include the optional third year under the FLSA bifurcated limitations period scheme for purposes of settlement; however, the County maintains that the proper statutory period was only two years because it contends that the misclassification of social workers was not willful.  The County further contends that its classification decision was made in good faith, and that therefore the Plaintiffs would not be entitled to liquidated damages if the matter were to be decided at trial.

The payment to each of the 39 social worker employees shall be allocated as follows:  60% shall be deemed payment of claims for unpaid wages; 40% shall be deemed payment for penalties, liquidated damages, interest and other non-wage forms of recovery.  The County shall pay the employer's portion of payroll taxes for the unpaid wage portion of the settlement.  Plaintiffs shall be responsible for the employee portion of payroll taxes and withholdings, which the County shall deduct upon issuing the settlement payments.

The Settlement Agreement separately provides that the County shall pay Plaintiffs' counsels' attorneys' fees and costs of $585,692.37, which sum was negotiated separately from, and following, the parties' agreement with respect to the $2,096,355to be paid to Plaintiffs, and which will not come out of that $2,096,355payment.

### III.   ARGUMENT

#### A.  The Settlement Agreement Is Fair and Reasonable

In this FLSA case, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims to approve the settlement.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Till v. Saks Inc.*, No. C 12-03903, 2014 WL

1230604, at *2 (N.D. Cal. Mar. 14, 2014); *see also Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 & n.5 (N.D. Cal. Apr. 15, 2014) ("*Otey I*") (collecting cases applying *Lynn's Food Stores*). "The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) ("*Otey II*"). For that reason, courts in this district apply the Eleventh Circuit's widely-followed standard set forth in *Lynn's Food Stores* and consider whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* (*quoting* 679 F.2d at 1355); *Dunn v. Teachers Ins. & Annuit Assoc. of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues...that are actually in dispute," the district court may approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354.[3] The key is to "ensure that private FLSA settlements are appropriate given the FLSA's purpose and that such settlements do not undermine the Act's purposes." *Goudie v. Cable Communications, Inc*., 2009 WL 88336, at *1 (D. Or. Jan. 12, 2009).

Here, the parties respectfully contend that the settlement is a fair and reasonable resolution of a bona fide dispute. The bona fide dispute centers on several core issues.

First, while the parties do not dispute that the Senior Support Services Workers and the Line-Staff Social Workers were misclassified, the parties strongly dispute whether the Unit Supervisors were misclassified. The County, on the one hand, asserts that the Unit Supervisors meet the requirements of two separate FLSA overtime exemptions: the "executive" exemption, and the "highly compensated" exemption. The County argues that the executive exemption applies because the Unit Supervisors each manage a recognized subdivision, regularly direct the work of at least two employees, and provide input regarding major decisions such as hiring and firing that is given "particular weight." The County further

---

[3] Some courts have suggested that a seven factor test utilized in Rule 23 class actions may be used to evaluate the fairness of an FLSA settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. General Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp*., 962 F.2d 1203, 1205 (6th Cir. 1992). For the reasons set forth herein, the parties assert that the settlement meets each of these factors.

argues that the "highly compensated" exemption (an entirely independent basis for exemption from the FLSA's overtime requirements) applies because the Unit Supervisors were during the relevant period paid at least $100,000 annually and "regularly perform at least one of the duties" of another exemption; e.g., directing the work of at least two employees.  Plaintiffs, for their part, argue that the Unit Supervisors meet no exemption because, *inter alia*, they do not manage a recognized subdivision or provide input on major decisions, and because the salary threshold for the highly compensated exemption was actually much higher during the relevant period.

Second, the parties strongly disagree on the amount of overtime hours worked by Plaintiffs. Plaintiffs' expert, relying upon questionnaire responses filled out by the social workers, determined that the social worker employees are entitled to $4.152 million in overtime wages (including liquidated damages) over a three-year period.  The County asserts that certain (but not all) of the social workers' estimates in the questionnaires are inflated.  For example, one Child Welfare Worker claims she worked an average of 20 hours of overtime each week (i.e., four hours each day) even though her caseload was roughly equal to other Child Welfare Workers who claimed significantly fewer overtime hours (most did not break single digits), she rarely or never performed on-call work, and she did not have many cases with out-of-state clients (therefore limiting travel).  And, according to the County's expert, even if the questionnaires were taken at face-value, Plaintiffs' expert's calculations were incorrect.  As a result, Plaintiffs as a whole would receive, at most, $1.3 million to $1.4 million even if the jury decided that a three-year statute of limitations is warranted.

Third, the parties dispute whether, based upon the County's conduct, the statute of limitations should be two or three years, and whether Plaintiffs would be awarded liquidated damages.  The FLSA provides that two years is the default statute of limitations, however, if a jury finds that the defendant's conduct is willful then the statute of limitations is extended to a third year.  29 U.S.C. § 255(a).  Here, the County asserts that the damages period should only be two years.  The County's concession to the three-year period was made solely to avoid costly litigation over the issue and promote the policy of encouraging settlement.  Plaintiffs contend that a third year is warranted but recognize that this is a fact issue for the jury to decide.  Under the County's formulation the social workers could be entitled to as little as $1 million over a two year period; and several of the social workers would no longer have

claims because a two year statute of limitations period would bar claims of those who retired or otherwise left the County before August 2016. Plaintiffs dispute these assertions and further contend that their damages could also increase significantly if, after trial, the Court should make a finding of liquidated damages. *See* 29 U.S.C. § 216. The County asserts that liquidated damages are not warranted because it acted in good faith.

In the end, taking into account the relative strengths and weaknesses of their respective positions, and the inherent uncertainty associated with any trial, the parties agreed to a compromise settlement whereby the social workers will receive $2,096,355. This figure will be allocated among the social worker employees based upon the individual damage estimates in Plaintiffs' expert's report, resulting in a settlement that equals approximately 89% of each social workers' own estimated damages covering a three-year period. The parties believe it to be within this Court's allowable discretion to adopt and approve this allocation. See *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003), citing *Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (courts retain discretion under FLSA to withhold a liquidated damages award, or to award less than the statutory liquidated damages total). The parties believe, after extensive arms-length negotiations, that this is a fair and reasonable resolution of a bona fide dispute. McLachlan Decl. ¶ 2, 7-8.

### B.  All Parties Have Expressly Agreed to the Settlement

The Settlement Agreement has been formally agreed to and signed by all parties. Thus, in addition to the County, each and every one of the 39 social workers, including all named plaintiffs and all opt-in plaintiffs, have signed the agreement. There are no objectors to the settlement; it has been expressly approved by all parties. McLachlan Decl. ¶ 9.

### C.  Attorneys' Fees and Costs Are Not Tied to the Settlement Amount

As noted above, the parties settled the case with the express understanding that attorneys' fees and costs would not be negotiated with the settlement for the social workers. At no point during the negotiations of the settlement of Plaintiffs' claims did Plaintiffs' counsel negotiate for attorneys' fees and costs. McLachlan Decl. ¶ 8. Only after the parties agreed to the total $2,096,355 million for the Plaintiffs did the parties negotiate the issue of attorneys' fees and costs, which total $585,692.37. In

summary, the issue of attorneys' fees and costs does not impact the fairness and reasonableness of the settlement of Plaintiffs' claims.

## V.     CONCLUSION

For the reasons addressed herein, and noting particularly that when, as here, the settlement reflects a reasonable compromise over issues that actually are in dispute, the parties respectfully request that this Court can and should approve the Settlement by entering the [Proposed] Order Approving the Stipulation of Settlement and Release.  *Lynn's Food Stores, Inc. v. United States*, *supra*, 679 F.2d at 1354 (if the settlement under the FLSA reflects a reasonable compromise over issues that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation.").

Dated:  January 27, 2020

BRIAN E. WASHINGTON,
MARIN COUNTY COUNSEL

By:     */s/ Brandon W. Halter*
    Stephen R. Raab
    Brandon W. Halter
    Attorneys for Defendant
    COUNTY OF MARIN

KESSELMAN BRANTLY STOCKINGER LLP

By:    */s/ David W. Kesselman*
    David W. Kesselman
    Trevor V. Stockinger
    Kara D. McDonald
    Attorneys for Plaintiffs

McLACHLAN LAW, APC

By: */s/ Michael D. McLachlan*
    Michael D. McLachlan
    Attorneys for Plaintiffs